Stanley Gartenstein, J.
A dual proceeding now before the court illustrates the operation of the current permanent-neglect statutes and the necessity of a long hard look at existing notions in -this realm.
The infant Shantal was born on November 26, 1970. She was voluntarily placed by respondent mother about a week after her birth and returned in April of the following year. The *434 petition which was ultimately sustained on the merits, alleged that one month thereafter, on May 21, 1971, the child was treated for multiple burns over her body and that the mother, in demanding her return, threatened to kill her. The finding was based upon the inference of law created by failure to satisfactorily explain the child’s injuries.
After these proceedings which sustained the petition, Shantal was placed with the Commissioner of Social Services and is currently living with concerned foster parents under the auspices of the Windham Child Care Agency. These foster parents •have expressed a desire to adopt her. Shantal, having been in placement, both by court order and on a voluntary basis, with the same foster parents all her life, knows only them. She is afraid of her natural mother; cries during visits; and does not know her new ¡sibling as a brother.
The natural father is now incarcerated for a term of 11 years at Elmira State Prison on charges of rape and robbery.
On March 29, 1973, ian extension of placement for one year was requested and contested by the respondent mother who was assigned counsel pursuant to article 18-B of the County Law. During interim proceedings, a petition framed in permanent neglect was filed seeking to free the child for adoption. This was consolidated with the pending proceeding and both were heard together. The putative father, having been served with these papers at his current domicile, communicated his opposition thereto by letter to the court, a copy of which was served upon the respective attorneys by the Clerk at the court’s direction. The court deems this letter as the putative father’s answer and waives any procedural defects it may contain.
The statute governing permanent neglect proceedings is section 614 of the Family Court Act which reads:
‘1A proceeding permanently to terminate the parent’s or other custodian’s custody of a child on the ground of permanent neglect is originated by a petition, alleging * * * (c) the authorized agency has made diligent efforts to encourage and strengthen the parental relationship * * *
“ (d) the parent * * * notwithstanding the agency’s efforts, has failed for a period of more than one year * * * •substantially and continuously or repeatedly to maintain contact with or plan for the future of the child although physically and financially able to do so ”.
Testimony at the trial clearly elicited the fact that these criteria were not met; that in fact, the mother has been maintaining a regular course of visitation. The distinct inference is *435 created and not dispelled that these perfunctory visits are almost legal maneuvers by .the mother to forestall a finding of permanent neglect. Nevertheless, even in the face of clear evidence ■that the mother is far from rehabilitated on the one hand; and that the interests of the child will be served by freeing her for adoption on the other, the court is .powerless to act.
At the very least, placement should be extended and the court so orders. The court, however, has no alternative but to deny the application to free Shantal for adoption. The net result of these proceedings leaves matters in limbo to everyone’s detriment. And the prognosis appears to be for a repetition of this same procedure year after year without resolving the matter either way. The cost in human terms is self evident. But in addition, there is the fact that the public treasury now spends approximately $5,000 annually for each child in foster-home placement. And placement is at best a tenuous stop-gap measure.
The problem of permanent neglect is a vexing one. The law must balance the diverse interests of parent, child, foster-parent and the taxpayers. None of these interests appears to be fully served herein. It would appear appropriate that a great deal of study and thought go into a solution.
The adjudication herein must be deemed as res judicata only against the mother. As to the putative father who did not participate in the trial, he has such rights granted by the CPLR as pertain to all litigants unavailable for trial. In addition, should he appear at ,a future time, his substantive rights will be further defined by Stanley v. Illinois (405 U. S. 645) and any additional case law which may have been decided in the interim.
The court especially notes the thoroughly professional conduct of the trial by the respective attorneys in a manner which immediately brought the issues of fact and law into focus.